UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOP TOBACCO, L.P. and REPUBLIC TOBACCO, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> KIRACO, LLC dba AOT and MR. ALBERT KIRAKOSIAN <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) **JURY TRIAL DEMANDED** |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Top Tobacco, L.P. and Republic Tobacco, L.P., for their Complaint against defendants Mr. Albert Kirakosian and Kiraco, LLC dba AOT allege as follows:

**THE PARTIES**

1. Top Tobacco, L.P. ("Top Tobacco") is a limited partnership organized under the laws of Delaware, and maintains its principal place of business at 2301 Ravine Way, Glenview, Illinois 60025.

2. Republic Tobacco, L.P. ("Republic Tobacco") is a limited partnership organized under the laws of Delaware, and maintains its principal place of business at 2301 Ravine Way, Glenview, Illinois 60025.

3. Kiraco, LLC dba AOT is, on information and belief, a limited liability company organized under the laws of California, maintains a place of business at 18543 Devonshire Street, Unit 383, Northridge, California 91324, and conducts business through a website at www.appleontop.com.

4. Mr. Albert Kirakosian is, on information and belief, an individual having an address of 18543 Devonshire Street, Unit 383, Northridge, California 91324.

## JURISDICTION AND VENUE

5. This is an action arising in part under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Illinois statutory and common law.

6. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 (a) and (b) in that it involves an action arising under the Lanham Act. This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) in that a substantial part of the activities giving rise to the claims alleged herein occurred in this District, and a substantial part of the property that is the subject of this action is situated in this District.

## NATURE OF THE CASE

8. Plaintiffs bring this action in response to Defendants' infringement of, and to protect the goodwill and consumer recognition in, its well-known trademark TOP, which Top Tobacco and its predecessors have used in various designs and formats for more than 100 years in connection with smoking tobacco, and for more than 60 years with cigarette papers, and for many years with various tobacco-related products, including cigarette filters, cigarette tubes, cigarette rolling, injecting and making machines, cigarette cases and cigarette trays, all long before the acts of Defendants alleged herein (the "TOP Mark"). Republic Tobacco and its predecessors have been the exclusive U.S. distributors of Top Tobacco's TOP products since long before the acts of Defendants alleged herein. As described more fully below, without Plaintiffs' authorization or consent, and with constructive and actual knowledge of Top

2

Tobacco's prior rights in its TOP Mark, Defendants began use of the designations TOP and APPLE ON TOP and trade name APPLE ON TOP in connection with the marketing, distribution and sale of hookah bowls designed to be used with tobacco. Defendants, therefore, have created circumstances whereby members of the public and trade are likely to be led to believe incorrectly that Defendants and their products are somehow authorized by, sponsored by or affiliated with Plaintiffs and with Top Tobacco's well-known TOP Mark.

9. Plaintiffs have taken the steps necessary to ensure that their products comply with applicable laws and regulations regarding the marketing of smokers' articles. Top Tobacco is a long-time signatory in good standing of the Master Settlement Agreement between the Attorneys General of the numerous settling states and participating manufacturers of tobacco products. As such, all of its products are subject to the marketing restrictions of the Master Tobacco Agreement. As its exclusive distributor, Republic Tobacco has agreed to abide by the market restrictions of the Master Settlement Agreement. Top Tobacco is also a Tobacco Tax Board permit holder subject to inspection. Additionally, as required by the Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. §387, Plaintiffs have submitted all of their products, including those sold under and in connection with the TOP Mark, to and registered their ingredients with the FDA, which enables the FDA to periodically test the products to ensure that they comply with the Act. As a result of these efforts, Plaintiff's have built up considerable goodwill among consumers and within the industry, and any association between Defendants and Plaintiffs or their TOP products will irreparably taint Plaintiffs and their TOP products with Defendants' inferior quality and will substantially undermine the goodwill and standing of Plaintiffs and their products in the public and regulatory community.

## COMMON ALLEGATIONS

### (Plaintiffs' Businesses and Top Tobacco's TOP Mark)

10. For many years, Top Tobacco, its predecessors and affiliates, including Republic Tobacco and its predecessors, have distributed and sold smokers' articles, including tobacco and tobacco-related products such as cigarette papers, cigarette filters, cigarette tubes, cigarette rolling, injecting and making machines. Top Tobacco, through its exclusive distributor Republic Tobacco, distributes such goods to distributors, wholesalers, retailers, resellers and to consumers across the United States through tobacco shops, drugstores, tobacco outlets, novelty, convenience and other retail stores.

11. The TOP brand of tobacco is one of the oldest tobacco brands in the United States. Top Tobacco's predecessors first began to use the TOP Mark with tobacco in the United States in the early 1900s. For more than 100 years, Top Tobacco and its predecessors have used the TOP Mark continuously in connection with tobacco, and over those many decades, TOP has become one of the best-known brands of tobacco in the United States. In fact, TOP is the leading selling brand of roll-your-own tobacco in the United States.

12. Since Top Tobacco's predecessors' first use of the TOP Mark with tobacco more than 100 years ago, the range of tobacco-related products used under and in connection with the TOP Mark has expanded. Beginning in or around the early 1940s, Top Tobacco's predecessors began using the TOP Mark with cigarette papers. Through Top Tobacco's and its predecessors' continuous use of the TOP Mark with cigarette papers, TOP also has become one of the best-known brands of cigarette papers in the United States.

13. Top Tobacco has subsequently expanded its line of TOP branded tobacco-related products to include cigarette filters, cigarette tubes, cigarette rolling, injecting and making

machines, cigarette cases and cigarette trays.

14. Republic Tobacco is the exclusive distributor of Top Tobacco's TOP branded products, and sells those products nationwide to wholesalers and retailers such as convenience, drug and food stores. As a result, Top Tobacco has become one of the best-known manufacturers of tobacco and tobacco-related products.

15. Republic Tobacco promotes and advertises Top Tobacco's TOP products. For years prior to the conduct of Defendants alleged herein, Republic Tobacco and its predecessors have devoted significant time, effort and resources to marketing and promoting smoking tobacco and related products under and in connection with the TOP Mark. In fact, Republic Tobacco and its predecessors have spent millions of dollars promoting the TOP Mark and Top Tobacco's products sold in connection therewith.

16. As a result of the many decades of continuous and extensive use of the TOP Mark in interstate commerce in connection with tobacco and tobacco-related products, Top Tobacco's TOP Mark has developed considerable recognition. The TOP Mark thus has acquired a distinctiveness and secondary meaning signifying Top Tobacco, and Top Tobacco has worked diligently to establish, and now owns, considerable and valuable goodwill in and symbolized by its TOP Mark.

17. As a result of Plaintiffs' and their predecessors' use and extensive promotion of the TOP Mark in connection with tobacco and tobacco-related products, the TOP Mark has become well-known and recognized by the public as identifying and distinguishing Top Tobacco and its products. This consumer goodwill and recognition in the TOP Mark constitutes one of Top Tobacco's most valuable assets.

18. To further protect its TOP Mark, Top Tobacco maintains the following federal registrations for the TOP, TOP and Design, and TOP-O-MATIC marks for use in connection with tobacco, cigarette rolling papers, cigarette filters, cigarette tubes, and cigarette rolling, injector and making machines, some of which are incontestable pursuant to 15 U.S.C. § 1065:

| Mark | Goods | Registration No. | Registration Date |
| --- | --- | --- | --- |
| TOP and Design | smoking tobacco | 2,293,958 | Nov. 23, 1999 |
| TOP and Design | cigarette rolling papers | 2,739,465 | July 22, 2003 |
| TOP | smoking tobacco | 2,739,466 | July 22, 2003 |
| TOP | cigarette rolling papers | 2,831,105 | April 13, 2004 |
| TOP | cigarette rolling paper; smoking tobacco; cigarette rolling machines; cigarette tubes; cigarette injector machines; cigarette filter tips; kits for making cigarettes containing cigarette rolling papers, filter tips and tobacco | 3,407,400 | April 1, 2008 |
| TOP and Design | tobacco | 3,720,176 | Dec. 1, 2009 |
| TOP and Design | cigarette rolling papers | 3,677,986 | Sept. 1, 2009 |
| TOP and Design | cigarette rolling papers | 3,677,987 | Sept. 1, 2009 |
| TOP and Design | tobacco | 3,710,606 | Nov. 10, 2009 |
| TOP | cigarette rolling machines | 3,918,139 | Feb. 8, 2011 |
| TOP-O-MATIC | cigarette rolling machines | 3,029,855 | Dec. 13, 2005 |

Copies of the registration records for the federal trademark registrations listed above are attached hereto collectively as Exhibit 1.

**(Defendants' Use of Top Tobacco's TOP Mark)**

19. On or about November 7, 2012, Defendant, Mr. Kirakosian, filed an application

6

with the U.S. Patent & Trademark Office to register the mark APPLE ON TOP in connection with hookah bowls. When Plaintiffs became aware of Mr. Kirakosian's application to register the mark APPLE ON TOP, Top Tobacco notified Mr. Kirakosian in writing of its prior use of, and existing rights in, its TOP Mark in connection with tobacco and tobacco-related products, informed Mr. Kirakosian that his use and registration of the designation APPLE ON TOP infringed Top Tobacco's rights in its TOP Mark, and demanded that Mr. Kirakosian abandon his application and cease all use of the term TOP, including APPLE ON TOP, and any designations confusingly similar thereto, in connection with his marketing and distribution of hookah bowls.

20. After engaging in protracted discussions with Plaintiffs, on or about September 19, 2013, Mr. Kirakosian abandoned his application to register the APPLE ON TOP mark. Upon information and belief, Defendants were not selling APPLE ON TOP branded products at that time.

21. Upon information and belief, Defendants recently began promoting and advertising hookah bowls under and in connection with the designation TOP and trade name APPLE ON TOP. Like Plaintiffs, Defendants market, distribute and sell tobacco-related products. On information and belief, Defendants distribute their hookah bowls via the internet, and namely their website located at <www.appleontop.com>, to tobacco shops, novelty, convenience and other retail stores throughout the United States.

22. When Plaintiffs became aware of Defendants' use of these designations, Top Tobacco again notified Defendants in writing of its prior use of, and existing rights in, its TOP Mark in connection with tobacco and tobacco-related products, reminded Defendants that their use of the designation TOP and trade name APPLE ON TOP infringed Top Tobacco's rights in its TOP Mark, and demanded that Defendants cease all use of the term TOP, and any

7

designations confusingly similar thereto, in connection with their marketing and distribution of hookah bowls.

23. Despite Top Tobacco's demands, Defendants have refused to cease use of the designation TOP. Defendants continue to use the designation TOP and the trade name APPLE ON TOP in connection with the promotion and advertising of hookah bowls.

24. Defendants' unauthorized use of the designation TOP and the trade name APPLE ON TOP is likely to confuse members of the public in that it will lead the public to believe incorrectly that Top Tobacco is the source of, has endorsed or approved, or is somehow associated with, Defendants or their goods. Because of Defendants' refusal to cease the conduct that has injured and continues to injure Plaintiffs, they have been forced to bring this action to protect Top Tobacco's decades-old rights in the TOP Mark and to redress the damage they have suffered as a result of Defendants' conduct.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1)(a))

25. Plaintiffs reallege and incorporate herein paragraphs 1 through 24 of this Complaint.

26. Pursuant to 15 U.S.C. § 1072, Defendants had constructive knowledge of Top Tobacco's ownership of and rights in its federally-registered marks comprised of the term TOP prior to Defendants' use of the designation TOP and trade name APPLE ON TOP.

27. Defendants also had actual knowledge of Top Tobacco's ownership of and rights in its federally-registered marks comprised of the term TOP prior to Defendants' use of the designation TOP and trade name APPLE ON TOP.

28. Defendants thus have deliberately and willfully used the designation TOP and trade name APPLE ON TOP to trade upon the widespread goodwill, reputation and selling power established by Top Tobacco and its predecessors under the TOP Mark, and to pass their hookah bowls parts off as those of Top Tobacco.

29. Top Tobacco has not consented to, and has in fact objected to, Defendants' use of the designation TOP and trade name APPLE ON TOP in connection with the promotion and sale of Defendants' hookah bowls.

30. Defendants' unauthorized use of the designation TOP and trade name APPLE ON TOP in connection with hookah bowls is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiffs in violation of 15 U.S.C. § 1114.

31. The intentional nature of Defendants' conduct renders this an exceptional case under 15 U.S.C. § 1117(a).

32. As a result of Defendants' conduct, Plaintiffs have suffered substantial damage and irreparable harm constituting an injury for which Plaintiffs have no adequate remedy at law. Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT II

### FEDERAL UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

33. Plaintiffs reallege and incorporate herein paragraphs 1 through 32 of this Complaint.

34. Defendants have deliberately and willfully used the designation TOP and trade name APPLE ON TOP to trade on Top Tobacco's long-standing and hard-earned goodwill in its TOP Mark and the reputation and selling power established by Plaintiffs and their predecessors

in connection with Top Tobacco's TOP tobacco and tobacco-related products, as well as to confuse consumers as to the origin and sponsorship of Defendants' goods.

35. Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiffs of the ability to control the consumer perception of their goods marketed under the TOP Mark, placing the valuable reputation and goodwill of Top Tobacco in the hands of Defendants, over whom Top Tobacco has no control.

36. Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiffs, and as to the origin, sponsorship or approval of Defendants and their goods, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

37. Defendants had knowledge of Top Tobacco's prior use of and rights in the TOP Mark before the acts complained of herein. The intentional nature of Defendants' conduct renders this an exceptional case under 15 U.S.C. § 1117(a).

38. As a result of Defendants' conduct, Plaintiffs have suffered substantial damage and irreparable harm constituting an injury for which Plaintiffs have no adequate remedy at law. Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT III

### VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510/1 *et seq.*)

39. Plaintiffs reallege and incorporate herein paragraphs 1 through 38 of this Complaint.

40. Defendants' actions complained of herein constitute deceptive trade practices in violation of 815 ILCS 510/2 in that they are likely to cause confusion or misunderstanding as to source, sponsorship or approval of Defendants' goods. Defendants' deceptive conduct also

creates a likelihood of confusion as to the affiliation, connection or association of Defendants and their goods with Top Tobacco and its well-known TOP goods.

41. Because Defendants had notice of Top Tobacco's prior use of and rights in its TOP Mark before Defendants' first use of the designation TOP, Defendants willfully engaged in deceptive trade practices in violation of Illinois law.

42. As a result of Defendants' willful and malicious conduct, Plaintiffs are likely to suffer, and have in fact already suffered, irreparable harm for which they have no adequate remedy at law. Unless this Court enjoins Defendants' conduct, Plaintiffs will continue to suffer irreparable harm.

## COUNT V

### UNFAIR COMPETITION

43. Plaintiffs reallege and incorporate herein paragraphs 1 through 42 of this Amended Complaint.

44. Defendants' conduct constitutes unfair competition in that such conduct: (a) is likely to cause members of the public and trade, and actual or potential customers of Plaintiffs to believe that Defendants and their goods are in some way sponsored by, affiliated with or otherwise connected to Plaintiffs and Top Tobacco's goods, when in fact they are not; and (b) enables Defendants to trade on and deprive Top Tobacco of the benefit of the goodwill in its TOP Mark.

45. Defendants' acts described above constitute unfair competition in violation of common law, as the acts amount to an intentional misappropriation of Top Tobacco's TOP Mark, as well as Plaintiffs' reputation and commercial advantage. As a result of their wrongful actions, Defendants will be unjustly enriched.

46. As a result of Defendants' conduct, Plaintiffs have suffered substantial damage and irreparable harm constituting an injury for which Plaintiffs have no adequate remedy at law. Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court enter a judgment in their favor and against Defendant as follows:

A. Preliminarily and permanently enjoining and restraining Defendants, their parents, subsidiaries, holding companies, licensees, owners, directors, officers, partners, assigns, related entities, affiliates, predecessors, successors, employees, representatives, trustees, receivers, agents and any other persons or entities acting on behalf of Defendants or with Defendants' authority, from:

    (1) using, selling, offering for sale, holding for sale, advertising or promoting any goods under or in connection with any trade name, trademark, service mark, Internet domain name or other designation of origin that is comprised in whole or in part of the terms TOP, APPLE ON TOP or any other term confusingly similar to Top Tobacco's TOP Mark; or

    (2) doing any act or thing that is likely to induce the belief that Defendants' goods, services or activities are in some way connected with Top Tobacco's business, or that is likely to injure or damage Top Tobacco's TOP Mark or business; and

B. Requiring that Defendants be ordered to recall from the channels of trade all products, packaging, advertising and promotional material sold or distributed by Defendants or affiliates that bear the terms TOP, APPLE ON TOP or any other term confusingly similar to Top Tobacco's TOP Mark;

C. Requiring Defendants to reimburse Plaintiffs for all damages they have suffered by reason of such acts, account for and pay over to Plaintiffs all profits derived by reason of their

acts of infringement, dilution, deceptive trade practices and unfair competition, and remit to Plaintiffs exemplary, treble, damages as provided for in 15 U.S.C. § 1117 and at common law;

D.  Finding that this case constitutes an exceptional case and awarding Plaintiffs their reasonable attorneys' fees and disbursements, as well as the costs they have incurred in bringing this action, pursuant to 15 U.S.C. § 1117 and 815 ILCS 510/3;

E.  Requiring that Defendants deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles and advertisements in their possession bearing the term TOP or APPLE ON TOP and all plates and other means of making the same, pursuant to 15 U.S.C. § 1118; and

F.  Requiring that Plaintiffs be awarded such other and further relief as this Court may deem equitable.

Dated: July 23, 2014                    Respectfully Submitted,

                                        By:   s/Antony J. McShane
                                              One of the Attorneys for Plaintiffs,
                                              Top Tobacco, L.P. and
                                              Republic Tobacco, L.P.

Antony J. McShane (ARDC# 6190332)
Jessica Elyse Cohen (ARDC# 6300680)
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, Illinois 60602
Telephone: (312) 269-8000
Facsimile: (312) 269-1747

NGEDOCS: 2181768.3